May it please the court, Amjad M. Khan of Latham & Watkins, appearing as specially appointed pro bono counsel on behalf of the petitioner Azucena Perez Martinez. I'll aim to reserve three minutes for rebuttal. Okay, the clock counting down. Right. Ms. Martinez is a 33-year-old working taxpayer and mother of three U.S. citizen children. She's resided in the United States for nearly two decades, having neither left the country nor committed any crime of any kind. On July 8, 1992, Ms. Martinez's mother, a legal permanent resident, filed an I-130 petition on behalf of her daughter, who was 15 and unmarried at the time. Six weeks later, the INS approved that petition. And after that time, Ms. Martinez did what thousands of Mexican immigrants do in her position. She waited for a visa number to issue. And how long was the likely wait? I mean, I understand that it's traditionally been long. Do we know how long the wait would have been if she just waited it out? Well, Your Honor, we are prepared today to submit a 28-J letter. According to the current government website and the visa bulletin as of last week, her priority date, July 1, 1992, is current in three weeks. Okay. So about 18 years. Right about now. Right. Okay. So for Mexican immigrants, more so than any other immigrant group, the process typically takes a very long time. In this case, over 18 years. The government doesn't contest any of this, but insists that Ms. Martinez needed to maintain her eligibility as an unmarried daughter of an LPR during the entire time she waited for a visa number to issue. The government insists that Ms. Martinez's marriage in 1994 forfeited her her ability to obtain a visa number based on her approved I-130 petition. All this is well and good, but aren't we here on the denial of a motion to reconsider as untimely? Certainly, Your Honor. I mean, it would help if you kind of focused on that rather than this overlay. Well, Your Honor, I can address squarely the issue of the denial of the motion to reopen, but it is our position that the notice of removal that was issued in this case is void ab initio. The entire constitutional motivation that initiated this process is completely untenable. Would you mind answering my question rather than making a speech? Sure, Your Honor. On the issue of the denial of the motion to reopen, as this Court is aware, the client, the petitioner, missed her hearing. She was late to the hearing. So an in absentia order issued and Ms. Missed her hearing? That is correct, Your Honor. She failed to appear. And due to car troubles. And her lawyer was present at the hearing, but the IJ nevertheless instituted or ordered in absentia her removal. Now, we don't know what happened during that hearing because no transcript was prepared. One transcript should have been prepared, which was during the actual hearing, and we briefed that issue. What happened after that is she, 13 months later, she moved to reconsider that in absentia. I don't want to sound sarcastic, but it took her 13 months to get her car fixed? I mean, 13 months later, she filed a motion to reopen. Well, Your Honor, I don't think it was because it took that long to get her car fixed. It took that long because she was proceeding pro se. She didn't have the lawyer that was present at the time. She offered an affidavit saying that she had car troubles. She couldn't apply. She sought equitable tolling, but it wasn't obtained. And the Court, on the very narrow ground of untimeliness, denied her motion. The BIA just removed the procedural point, reviewed the procedural point of untimeliness, and thereafter, she filed a series of motions to reopen. Could you focus on why we ought to grant your petition? You know, I mean, there's a, it's here on a very narrow ground. Your Honor, I believe this Court is, under the REAL ID Act, is entitled to review ripe constitutional claims that we've advanced. We believe that the Court did not, did not engage in the exceptional circumstances analysis. Under Juarez and Singh, both cases we cite and the government fails to address in their brief, this Court is, reviews the lower court proceeding. And if it's arbitrary or irrational, if, if the Court should have engaged in the exceptional circumstances analysis, if the petitioner had no reason to evade the hearing, which she didn't. She had a, she had an I-130 that was approved. She had every reason to be there. She appeared in her prior hearings. Just like in Singh, this Court, in, in, in Juarez and Singh, reversed the denial of the motion to reopen and, and asked the IJ to engage in the merits of the exceptional circumstances argument. And we have clear authority on point for that reason. And moreover, in the, in, in this situation. And exceptional circumstances would have allowed her to get a granted motion to reopen, even though it was untimely? Yes, Your Honor. We, we believe that the exception. Is the decision by the BIA not to reopen when the motion is untimely, revealable by us? Yes, I believe it is, Your Honor, under the. Under what authority? It looks like it's a spontaneous reopening by the board because it's untimely. And I think Kimian says it's not revealable. How do you get around to Kimian? Well, Your Honor, I believe we get around that based on the authority I've cited. I believe that in, in the situation of this, of this kind of case, where the underlying facts are such, where the merits are strong, she has every reason to attend the hearing. She filed an untimely motion, but she raised the exceptional circumstances issue. The IJ ignored that. The IJ should at least consider those exceptional circumstances, particularly in this case. And with the I-130 pending, and the approval of that pending, there is a, there is an underlying, and I stress again, an underlying unconstitutional motivation that's, that, that renders void ab initio, this notice of removal. So, so I believe the Court can procedurally, through the authority that I've cited, review this matter. And I believe that even, even if the. The underlying unconstitutional motivation. The, the fact that the condition that the government has imposed very explicitly in their brief, and they raised it for the first time on appeal, so we have no reason to, to, Ms. Martinez had no reason to raise these issues before, because in court-ordered mediation, we heard for the first time that she should have been unmarried during the entire time she waited for a visa to issue. That's fundamentally a due process, substantive due process violation under the right to privacy. And. But I think that's what the statute says, right? The statute says that she, the statute does not say that. The statute says there's a preference allocation. 8 U.S.C. 1153A, there's a preference allocation for unmarried daughters of legal permanent residents. It does not say that you have to remain unmarried for the duration of the time to, for a visa to issue. Israel versus INS. This Court very clearly, that's the best case we've cited. It's squarely on point. The situation there was less, was, was less egregious. The I.J. imposed a condition to a petitioner saying, you can voluntarily depart in 30 days, but don't get married during those 30 days. She proceeded to get married 11 days later. She moved to reopen her case, and I.J. said, you lied to us. You misrepresented the court that you were going to get married. We're denying your motion. The BIA affirmed, and this circuit said, no, you cannot do that. That's unjustified government interference. And the, I, on a 30-day conditional grant, here, the government's insisting that Ms. Martinez, who's currently in three weeks, has a priority date that's current. She should have been unmarried between the ages of 15 and 33 until the visa issued. I mean, that can't, there's no rational basis for that view. And, Your Honor, with two minutes left, I'd like to reserve that time. Let's go back to exceptional circumstances. Is that the keystone or the centerpiece of your argument, that she had exceptional circumstances, nobody paying any attention to them? The procedural keystone of our case is that the exceptional circumstances that she cited should have been reviewed, and her I-130 should have been considered. And what were those exceptional circumstances? So, she's raised several already. She's preserved them. One, we have no reason to know how late she came to the hearing. She said she had heart problems. That's not an exceptional circumstance. How is that an exceptional circumstance? Well, she... I mean, I can't find anything even close to suggesting that that's an exceptional circumstance. Well, I think the court, I think we cited in our brief a case, a recent case, that suggests that the lateness, the time it takes to attend a hearing, if it's two hours, that the lateness of attending the hearing matters. And we don't know how late she was. We don't know why she was late. We don't know if she was a few minutes late. Her counsel was present. We don't know what her counsel said on her behalf to the IJ. Is that we don't know? I mean, in exceptional circumstances, wouldn't you set that out in some kind of specific detail? I think... All right. Well, what's the next one? What's the next exceptional circumstance? Well, I believe that she didn't have... She's pro se. She didn't have counsel. We don't know the reasons. That's not an exceptional circumstance either. Well, Your Honor, the... Exceptional means exceptional. It doesn't mean this is what happened, therefore it's exceptional. I believe that if you're late to a hearing because of car trouble, we don't know the full extent of the record. That's exceptional circumstances? Sure. I believe it is. We don't know the underlying rationale. What if she came 60 seconds late to a hearing? We don't know that. We don't know from the record. There's case that says that that can be exceptional. If somebody walks in three seconds late and the judge says, okay, you weren't here three seconds ago or ten seconds or a minute ago, then I can understand that argument. We have no idea. Well, that's part of the problem, Your Honor. We don't have a transcript. Well, but I don't know. You're saying, look, it's exceptional. I think it's probably exceptional if somebody's sitting in the courtroom or walks in five seconds later and then raises their hand and says, too late. Well, we cited... Because of car trouble. Well, the cases that we've cited, there is a record of what those circumstances were. There was an opportunity for her to be heard. But I go back on the same proposition. This circuit is uniquely situated to review constitutional questions under the Real ID Act. The notice of removal is void ab initio. These are dramatic circumstances. When and in what form did she bring forth her, quote, exceptional circumstances to anybody? In her motion to reopen on December 16, 2008. So she filed a motion to reopen claiming exceptional circumstances? That's correct, Your Honor. And did she detail or support those with an affidavit explaining what happened? You keep saying we don't know, we don't know, we don't know. Who knows? She does. Is there anywhere in the record that supports what you're saying? I understand, Your Honor. She proceeded pro se. She attempted to... Your answer is no. No, it's not no. She did submit an exceptional circumstances argument, which should be liberally construed by the circuit. She provided an affidavit. She didn't detail her... Did she say what they were? She said she had an affidavit of support for car troubles. But she didn't beyond say there were car troubles. As pro se... We don't know because she didn't tell us. Well, she didn't use the legal jargon because she was proceeding pro se, and I don't think that's fair for her to have to use it. She didn't use any factual jargon. I think she did. She said she had car problems. Now, I understand you've come in at a late stage. Have you actually been in contact with your client? I have, Your Honor. And I don't know whether this will help, but a fairly standard procedure sometimes is to make an offer of proof. Do you now know what those exceptional circumstances are? You're saying we don't know, we don't know. You may be saying that merely because we cannot tell from the record. If we were to have her in here with a declaration in hand, what would she say? Well, Your Honor, all I know is that she's offered the following. She said that she was trying to attend the hearing that day. She had car troubles. She thought her lawyer was present there. She assumed her lawyer would be able to handle it. She still nevertheless sought to attend the hearing. She couldn't make it. And that's all I've heard from her so far. And do we know anything about the, quote, We do. She sought desperately to find a lawyer and couldn't get one. And she said she couldn't afford one. She really tried to get advice from other individuals. She really, as soon as she was able to, she applied. And she always thought a visa should issue to her. In fact, I cite in the record, a visa did issue to her in 1996. And that's really, I think, the unfortunate circumstance of this case and really what. Now, why does a visa issue to her in 1996 when you say she's probably not supposed to get a visa until about two or three weeks? Well, her priority date was current. I mean, I think that process can vary. Sometimes the priority date becomes current sooner. What I understand from the Visa Processing Center, and this is an extrajudicial fact, and I acknowledge that, but when I called the National Visa Processing Center, they specifically told me that a visa issued to her, which really rendered this case for me and our client very problematic. But the fact that the justification offered for removing her is that she got married in 1994. I just don't believe that's a constitutional basis for to do. Why don't we hear from the government? We've taken you over time. We'll give you a chance to respond. I appreciate that, Your Honor. Thank you. Thank you, Your Honor. May it please the Court, Dan Goldman on behalf of the Attorney General. The case here is a very narrow one. This Court is here to review only the Board's 2007 decision denying the motion to reconsider. The Board denied that motion because it was untimely. The fact that it was untimely is undisputed. And, in fact, Petitioner doesn't even challenge that fact before this Court. And on that basis alone, the Court should deny the petition for review. With regard to the other arguments, which consume most of the time already today and which consume most of the brief from Petitioner, those are unexhausted arguments. They are not properly before this Court. Well, you know, to the degree that there's a constitutional argument, there's not an exhaustion problem. There's a constitutional exception, Your Honor. But the constitutional exception in the Real ID Act in 8 U.S.C. 1252a2d specifically says that that section is an exception to sections a2b, which deals with discretionary denials of relief, and a2c, which deals with criminal aliens. It does not excuse the failure to exhaust or the failure to even file a petition for review. And that's what we have here. It's not simply an exhausted issue. I don't think I'm advancing an argument that is going to cause you to lose. This is a straightforward proposition of law. The BIA does not have authority to rule on questions of constitutionality. That is correct, Your Honor. Therefore, we don't hold it against someone for not presenting a question of constitutionality to the BIA when the BIA has no power to rule on that question. Sure. Generally speaking, there is, Your Honor, they do have the authority to address statutory questions over which an immigration statute or their own regulations. And, in fact, those are the arguments that are being raised. Would I say the contrary? No, Your Honor. Okay. I don't know if Your Honor wants me to address some of the issues that were raised here today. I'm happy to try. One thing that I would want to point out factually, the arguments with regard to the right to marry simply are inaccurate. The statement that somehow the conditions for the adjustment of status that she sought somehow infringed upon her right to marry, she applied for a particular kind of relief. It was as the unmarried daughter of a legal permanent resident. The difference between this case, even if this Court were to look past the exhaustion argument, past the fact that no petition for review was sought, the Israel case, which the petitioner cites, is completely different because the relief sought in that case was voluntary departure. The immigration judge in that case said, I'm going to impose this special condition, you can't marry and I'll give you voluntary departure. That's not a condition for which voluntary departure is or is not granted. And that's why this Court had a problem with that issue. In this case, the specific relief she sought said, I am an unmarried daughter. She knew what she was walking into. So if a person requests relief on that basis, unmarried daughter, it's the government's view that that person must remain unmarried during the entire course of the proceedings? Yes, Your Honor. And second, that that issue, if a petitioner wants to raise that issue, it should be raised first to the Board. I understand Your Honor's concern they can't address constitutional claims, but they can certainly address an immigration statute and their own regulations. The other thing that I would briefly address today with regard to the lack of a transcript, Ms. Perez-Martinez had the opportunity to ask for a transcript. She specifically provided a notice at page 98 in the record that goes out in cases just like this one, which says there is no transcript generally provided in the denial of a motion to reopen an in absentia proceeding. She got that notice. There's no suggestion she didn't. She did not ask for a transcript. So the suggestion that we don't know what happened, I think we do have a pretty good idea of what happened. Looking at the record, she filed a pro se motion to reopen, passed the time limit for doing so. Then she filed a pro se appeal to the Board. And in both of those, she says, I didn't make it to court. So the suggestion that we're talking about, was she three seconds late, I can understand where if she's three seconds late and the judge says now you're too late, that would be a problem. We do have such cases. You do, Your Honor. But there's no suggestion here that that's what happened. There's also no indication in the record as to why she didn't simply go back to the attorney who showed up in court who was there and say, did you ever see me in court that day? If the kind of facts that are being hypothesized about here today were anywhere near accurate, that kind of affidavit should have been available. And it wasn't. The facts in this case, I'm not going to stand here and say they're not difficult facts, but I am without the power to change the facts. And she's filed numerous motions to reopen. She is not unaware of the availability of a petition for judicial review because she filed one in this case and has never sought that before. And all of the issues that she's raised, they present some interesting legal questions, but they are not properly before this Court. Am I right in understanding that this has already been through our ninth circuit, court-sponsored mediation? Yes, Your Honor. And was she given and is she still entitled to a voluntary departure or not? I don't recall whether the original ‑‑ I don't believe she was given voluntary departure, Your Honor. At this point, the time would have lapsed for that. Well, she only got out of the country, but I don't know. Off the top of my head, I would want to double check. I don't think voluntary departure is an issue here. Okay. Subject to the Court's questions. Thank you, Your Honor. Would you like a minute? I appreciate that. I know I'm over time. Judge Schrott asked for some authority on whether exceptional circumstances can arise simply from car problems. We did cite one case, Perez v. Mukasey in footnote 10, page 18 of the brief. That's a 2008 case. The government does not articulate a single rational purpose for this arrangement, which is to remain unmarried from the pendency of the entire process. There is no rational basis cited, not a single policy reason justified. The layer of scrutiny per Israel is strict scrutiny. It says none of that is properly before us. And this is a very narrow case, as I suggested in the earliest moments of denial of motion to reconsider. Well, Your Honor, I won't revisit the procedural points that I raised, other than to say that her lawyer was present there, and her lawyer attempted to articulate the merits of her cancellation of removal case, which was pending. And presumably, if the merits proceeded, and she pulled out her I-130, and the judge saw that, and the judge saw that the priority date was coming up, this would have been a completely different circumstance. We don't know. We don't have a transcript. And she's not required to issue it. Okay. There's your minute. Thank you, Your Honor. I appreciate it. And the argument you were just doing, we understood fully from before. Thank you. Thank you very much. I understand that you've taken this case pro bono. Yes. I want to say on behalf of the Court that we are very grateful to firms like yours and to you for taking these cases. They are enormously helpful to us and to the process, win or lose. And we thank you for that. Thank you very much. Appreciate it. Thank you. The case of Jerez-Martinez v. Holder is now submitted for decision. The next case is Soria Vega v. Holder.
judges: Breyer, Trott, Fletcher W.